# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| SUZANNE CATHERINE BARRON, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | No. C15-4028-LTS <br><br> **MEMORANDUM OPINION AND ORDER** |

Plaintiff Suzanne Catherine Barron seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Barron contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision will be affirmed.

## I. BACKGROUND

Barron was born in 1965. She completed high school and two years of college. AR 436-40. On March 19, 2009, Barron applied for SSI.[1] Her claim was denied initially and on reconsideration. AR 191, 195, 201, 205. At Barron's request, an administrative hearing was held on October 18, 2011. AR 92-147. The Administrative Law Judge (ALJ), Ronald D. Lahners, denied Barron's claim on December 8, 2011. AR 170-79. Barron

---

[1] Barron also filed an application for disability insurance benefits (DIB) under Title II of the Act. Both parties agree, however, that the DIB claim is not before the court because Barron's amended alleged disability onset date of March 19, 2009. *See* Doc. No. 13 at 2; AR 15, 436.

then appealed the denial to the Appeals Council, which remanded the case to the ALJ for further proceedings on March 12, 2013. AR 185-89.

The ALJ held a supplemental administrative hearing on August 20, 2013. AR 40-91. The ALJ denied Barron's claim again on September 16, 2013. AR 15-32. The ALJ found that Barron had not performed substantial gainful activity after her amended alleged disability onset date of March 19, 2009. AR 19. The ALJ next found that Barron's severe impairments included various mental health conditions, and physical conditions concerning her cervical spine and shoulders. AR 19.

The ALJ determined that for the period between April 1, 2011, and July 30, 2012, Barron's impairments met the *per se* disabled criteria of section 12.04 of the Appendix 1 Listing of Impairments (Listings). AR 25. The ALJ found that Barron's condition medically improved beginning July 31, 2012, such that she no longer met the criteria of section 12.04. AR 26. The ALJ found that between March 19, 2009 and March 31, 2011, and between August 1, 2012 and September 16, 2013, Barron did not have an impairment or combination of impairments listed in or medically equal to one contained in the Listings. AR 20.

The ALJ determined that between March 19, 2009, and March 31, 2011, and between August 1, 2012, and September 16, 2013, Barron retained the RFC to perform light work with the following nonexertional limitations: stooping, climbing, kneeling, and crawling could be performed only half of normal; reaching above the shoulder should only be performed on an occasional basis; interaction with the public, supervisors, and peers should be minimized or not occur; and any work should have minimal change and be repetitive in nature without the need to concentrate or change from one task to another. AR 20-21, 27-28. The ALJ determined that prior to April 1, 2011, and after July 30, 2012, Barron could not perform her past relevant work, but she had the RFC to perform the representative sample of unskilled occupations the Vocational Expert (VE) identified

2

at the hearing (production assembler, machine packager, and housekeeper cleaner). AR 25, 31.

Consequently, the ALJ determined that Barron was entitled to SSI benefits for the closed period of disability between April 1, 2011, and July 31, 2012, but that she was not entitled to SSI benefits for the adjudicated periods between (a) March 31, 2009, and March 31, 2011, and (b) August 1, 2012, and September 16, 2013, because her impairments did not prevent her from performing other work in the economy during those periods of time. AR 32. The Appeals Council denied Barron's request for review on February 9, 2015. AR 1-4. As such, the ALJ's second decision stands as the final decision of the Commissioner. AR 1.

On March 30, 2015, Barron filed a complaint (Doc. No. 3) in this court seeking review of the Commissioner's decision.[2] The parties have briefed the issues and the matter is now fully submitted.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either

---

[2] This case was initially assigned to United States District Judge Mark W. Bennett and referred to me, as a United States Magistrate Judge, for the filing of a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Upon my appointment as a United States District Judge, the case was reassigned to me. As such, this order constitutes this court's final disposition of the case.

in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the

presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the

claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006 and is not eligible for Title II benefits as of the amended alleged onset date.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date.

3. Since the alleged onset date of disability, March 19, 2009, the claimant has had the following severe impairments: schizoaffective disorder, bipolar disorder, a history of obsessive-compulsive disorder, a history of post-traumatic stress disorder, amphetamine dependence in full remission, disorders of the cervical spine, a history of fatty liver disease, bilateral shoulder tendinitis, and history of migraine headaches.

4. Prior to April 1, 2011, the date the claimant became disabled, and after July 30, 2012, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Prior to April 1, 2011, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant could lift 30 pounds occasionally and 20 pounds frequently. The claimant could sit for six hours or stand for six hour in an eight-hour day. The claimant has unlimited use of the extremities. Stooping, climbing, kneeling and crawling

6

could be performed only half of normal. Reaching above the shoulder should only be performed on an occasional basis. The claimant would not have any problems remembering or carrying out instructions. She would have difficulty interacting with the public, supervisors and peers and that such interaction should be minimized or not occur. Any such work should have minimal changing and any such work should be repetitive in nature without the need to concentrate or change from one thing to another.

6. Since March 19, 2009, the claimant has been unable to perform any past relevant work.

7. Prior to the established disability onset date, the claimant was a younger individual age 18-49.

8. The claimant has at least a high school education and is able to communicate in English.

9. Prior to April 1, 2011, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job.

10. Prior to April 1, 2011, considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed.

11. Beginning on April 1, 2011, the severity of the claimant's impairments has met the criteria of section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

12. The claimant was not disabled prior to April 1, 2011, but became disabled on that date and continued to be disabled through July 30, 2012.

13. The claimant has not developed any new impairment or impairments since July 31, 2012, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from March 19, 2009 through July 30, 2012.

14. Beginning July 31, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

15. Medical improvement occurred as of July 31, 2012, the date the claimant's disability ended.

16. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals the severity of a listing.

17. Beginning July 31, 2012, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant could lift 30 pounds occasionally and 20 pounds frequently. The claimant could sit for six hours or stand for six hours in an eight-hour day. The claimant has unlimited use of the extremities. Stooping, climbing, kneeling and crawling could be performed only half of normal. Reaching above the shoulder should only be performed on an occasional basis. The claimant would not have any problems remembering or carrying out instructions. She would have difficulty interacting with the public, supervisors and peers and that such interaction should be minimized or not occur. Any such work should have minimal changing and any such work should be repetitive in nature without the need to concentrate or change from one thing to another.

18. The claimant is unable to perform any past relevant work.

19. Since July 31, 2012, the claimant has been a younger individual age 18-49.

20. The claimant has at least a high school education and is able to communicate in English.

21. Beginning July 31, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

22. Beginning July 31, 2012, considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed.

23. The claimant's disability began April 1, 2011 and ended July 31, 2012.

24. The claimant was not under a disability within the meaning of the Social Security Act at any time through September 30, 2006, the date last insured. The Title II request for hearing is dismissed.

AR 20-33.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is

9

substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Barron argues the ALJ's decision is flawed for three reasons:

1. Substantial evidence does not support the ALJ's RFC findings before or after the closed period.

2. The ALJ failed to give proper weight to expert medical opinions.

3. The ALJ failed to follow the order of the Appeals Council on remand.

I will address these arguments separately below.

### A. *The RFC Determination*

The RFC is an administrative assessment that the ALJ determines upon consideration of all evidence in the record. *See* 20 C.F.R. § 416.927(e)(2); Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5; SSR 96-8p, 1996 WL 374184, at *2. A claimant's RFC is "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 416.945(a)(1). This "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence." *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. At Step Four, the claimant has the burden to prove his RFC and the ALJ determines the RFC based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004).

The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

11

### 1. *Physical RFC*

Barron notes that in his first decision, the ALJ found that she could lift 20 pounds occasionally and 10 pounds frequently, but in his subsequent decision he found she could lift 30 pounds occasionally and 20 pounds frequently. Doc. No. 13 at 10-12; AR 27, 174. Barron contends that the ALJ failed to explain this change and that the second finding is not supported by the record. This argument does not merit reversal.

First, because the Appeals Council vacated the ALJ's initial decision, AR 186, it is not binding on either party. 20 C.F.R. § 416.1455(c). On remand, the ALJ was entitled to take any additional action that was not inconsistent with the Appeals Council's remand order. 20 C.F.R. § 416.1477(b). The Appeals Council informed the ALJ that he should give further consideration to Barron's maximum RFC. AR 188. He did. The ALJ acted within his authority by revisiting Barron's physical RFC.

Second, both of the ALJ's RFC determinations included a finding that Barron had the RFC to perform light work. AR 20, 27. The jobs the VE identified involve only light exertional work. AR 25, 31, 86. The VE provided *Dictionary of Occupational Titles* (DOT) codes for the identified jobs and noted that he was only considering the light exertional category of jobs. AR 86-87. The DOT defines a production assembler, machine packager and housekeeper/cleaner occupations as light exertion jobs. *See* DOT Nos. 706.687-010, 920.685-078, and 323.687-014, respectively. By definition, such jobs would not require Barron to lift more than 10 pounds frequently and 20 pounds occasionally in these jobs. *See* 20 C.F.R. § 416.967(b). Those jobs thus fell within the ALJ's first, more-restrictive physical RFC finding. Barron has not shown that the ALJ's alleged error with regard to the second RFC finding had any potential impact on the disposition of this case. *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009); *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000).

Finally, at the time of the second hearing the ALJ had the benefit of new evidence in the form of findings made by Douglas Martin, M.D., after a comprehensive consultative

examination on April 16, 2013. AR 907-11. Dr. Martin found that Barron could lift and carry up to 30-35 pounds occasionally and up to 20 pounds frequently. AR 910. Thus, the medical evidence of record supports the ALJ's finding, in the second RFC, that Barron could lift 30 pounds occasionally and 10 pounds frequently beginning July 31, 2012. AR 27.

### 2. *Mental RFC*

Barron contends that substantial evidence does not support the ALJ's mental RFC because the opinion of Michael Baker, Ph.D., is vague, and Scott Shafer, Ph.D., erred in stating Barron was noncompliant with her medication treatment. Doc. No. 13 at 13-15. The Commissioner disagrees.

Dr. Baker conducted a one-time consultative examination on August 17, 2009. AR 539-40. The ALJ acknowledged that he included some of Dr. Baker's limitations in formulating Barron's mental RFC. AR 22. Specifically, the ALJ incorporated Dr. Baker's limitations of (a) jobs that involve no more than minimal interaction with the public, coworkers and supervisors, (b) the need for repetitive work and (c) jobs that do not require significant concentration or judgment. AR 22, 539. The ALJ noted, "There is no basis in the record to support a conclusion that Dr. Baker's opinion should be interpreted as suggesting greater limitations before April 1, 2011." AR 22. Dr. Baker explicitly stated the abilities and limitations he believed Barron possessed. AR 539-40.

Barron complains that the ALJ should have interpreted Dr. Baker's opinion as being more restrictive in light of the fact that Dr. Baker assigned a Global Assessment of Functioning (GAF) score of 50.[3] However, the Commissioner has declined to endorse

---

[3] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 1994) (DSM–IV). GAF scores between 41 and 50 indicate that the individual has serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent

13

GAF scores in disability analysis and has determined that GAF scores have no "direct correlation" to disability adjudications. 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000); *accord Jones v. Astrue*, 619 F.3d 963, 973-74 (8th Cir. 2010). Indeed, the latest version of the *Diagnostic and Statistical Manual of Mental Disorders* has discontinued the use of GAF scores because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013) (DSM-V). Moreover, the Commissioner's regulations and rulings define the term "medical opinion" as including statements that discuss the particular activities an individual can still do in terms of walking, lifting, seeing, and remembering instructions. *See* 20 C.F.R. § 416.927(a)(2); SSR 96-5p, at *4. Thus, a GAF score does not qualify as an opinion. I find no error in the ALJ's failure to give weight to the fact that Dr. Baker assigned a GAF score of 50.

The ALJ also discussed Dr. Shafer's opinion that Barron "might only be able to interact with the public, coworkers and supervisors on a superficial level." AR 22, 557. The ALJ noted that Dr. Shafer was impressed with Barron's good response to her medication regimen but noted that she was not fully compliant. *Id*. Barron argues that Dr. Shafer was mistaken about her compliance. Doc. No. 13 at 14-15. However, records from the Iowa Bureau of Prisons indicate Barron was noncompliant with medications on two separate occasions and she did not take lithium medication that her doctor had prescribed three weeks earlier. AR 520. Records from February 2009 specifically note that Barron's symptoms "definitely stabilized" and she "has done very well on medications." AR 509. Thus, the point of Dr. Shafer's remark was that the records showed Barron's medications helped control her mental functioning when she took them. Impairments that treatment or medication can control are not disabling. *Buckner v. Astrue*,

---

shoplifting) or a serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). *Id*.

646 F.3d 549, 557 (8th Cir. 2011); *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

For all of these reasons, I find that there is substantial evidence in the record to support the ALJ's RFC assessments, both physical and mental.

## B. *The ALJ Properly Considered the Medical Opinions*

The medical experts gave opinions that cut both ways. The ALJ analyzed those opinions and considered the record as a whole to determine the weight to afford to each. I find that in arriving at his RFC finding, the ALJ properly considered and weighed the opinions of Thomas England, Ph.D., Dr. Baker, Dr. Shafer, Advanced Practice Registered Nurse (APRN) Carla Mundt, Licensed Independent Social Worker (LISW) Joann Martin, Ronald Brinck, M.D., Bushra Nauman, M.D., and Denise Marandola, Ph.D. AR 22-30.

An ALJ is free to reject medical opinions, or parts of medical opinions, that are inconsistent with the author's own treatment notes or other evidence of record. *Hacker*, 459 F.3d at 937; 20 C.F.R. § 416.927(d)(2). Also, when medical providers base their opinions on a claimant's subjective statements rather than clinical findings, the opinions are not binding on the ALJ. *See* SSR 96-2p, 1996 WL 374188, at *1; *Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999); *Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996) (physician's opinion properly discounted as being based on plaintiff's complaints and not physician's findings). The ALJ is not required to give any weight to opinions that the medical provider does not link to clinical evidence with any reasoning or analysis. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003); *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999). The lack of supportability in an opinion is a factor that justifies according it less than controlling weight. *See* 20 C.F.R. § 416.927(c)(3).

Here, Barron complains that the ALJ failed to give proper weight to the opinions from LISW Martin in July 2011, Dr. Brinck in February 2012, and Dr. Nauman in July

2012. *See* Doc. No. 13 at 20-22. However, these opinions concern Barron's condition during the period of time the ALJ found her to be disabled. In fact, the ALJ specifically noted the opinions from Dr. Brinck and Dr. Nauman while explaining his decision to award a closed period of disability in this case. AR 26. The ALJ pointed out that Dr. Brinck opined that Barron could not maintain gainful employment and noted that in early July 2012, Dr. Nauman reported that she was responding "very well" to treatments for cervical facet pain syndrome, but not completely. *Id*. Barron has not shown reversible error in the ALJ's consideration of the evidence from Drs. Brinck and Nauman.

Further, the ALJ properly considered the September 2010 conclusory opinion from LISW Martin at Siouxland Mental Health Center (SMHC). AR 22-23. After a brief description of Barron's diagnoses and medication, Martin stated: "At this time, I do not believe she is capable of competitive employment." AR 623. The ALJ determined that the opinion was entitled to no weight because it was out of proportion with the objective evidence and LISW Martin's own treatment notes, she relied quite heavily on Barron's subjective statements over the objective evidence, and it was conclusory with very little explanation of the evidence relied upon. AR 23. As noted, these are legitimate reasons for discounting an opinion.

For example, the clinical findings on the same date as Martin's September 2010 opinion indicate that Barron's mood was euthymic with a congruent affect, appearance was casually dressed and clean, speech was normal in rate and tone, motor skills had no apparent abnormalities, judgment was good, insight was fair, and concentration and memory had no problems. AR 752.[4] In light of the normal clinical findings in the

---

[4] Examination of Martin's and her SMHC co-workers' treatment notes show that Barron's mental status examinations repeatedly showed she was casually dressed and groomed, her speech was at a normal rate and tone, there were no apparent motor activity abnormalities, she had good concentration, memory, and judgment, and her thoughts were linear, logical and goal directed. AR 564-566, 568, 570, 572, 574, 576, 578, 581, 584, 729, 732, 734, 736, 738, 740, 743, 745, 747, 752, 755, 757, 760, 763, 766, 770, 772, 775, 779, 783, 788, 793, 799, 804, 808, 811, 814, 818, 820, 823, 827, 829, 833, 838, 1106, 1121, 1132, 1136, 1144, 1146, 1149, 1151, 1156, 1158, 1161, 1165, 1168, 1176, 1180, 1182, 1184, 1186, 1188.

treatment records, the ALJ was entitled to conclude that Martin inappropriately relied on Barron's subjective complaints over the clinical findings. Also, an opinion stating that a claimant is "disabled," "unable to work," or the like is not a medical opinion. *See, e.g., Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (opinion that claimant was "totally disabled" gets no deference because it invades the province of the Commissioner to make the ultimate disability determination); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (a medical source opinion that an applicant is "disabled" or "unable to work" involves an issue reserved to the Commissioner and therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight); 20 C.F.R. § 416.927(e); SSR 96-5p, at *5.

Barron also references the one-time examination and opinion of APRN Mundt from Catholic Charities Omaha. *See* Doc. No. 13 at 20. On April 6, 2009 (about two weeks after Barron's alleged disability onset date), Mundt stated: "I urged her to apply for disability since she will never be able to obtain gainful employment." AR 532. Again, this statement is not a "medical opinion" and is entitled to no deference.

Mundt also wrote that Barron was fully oriented, made direct eye contact, was casually dressed, had a full affect, and her mood was only somewhat depressed. *Id*. She reported that Barron's speech had average spontaneity and productivity, with good fluency and no pressure, and thought process was organized with no obsessions, tangentially, loss of associations, flight of ideas, or racing thoughts. *Id*. Mundt found Barron to be alert, to have above-average intelligence and fund of knowledge, and to have some insight into her problems and past behaviors. *Id*. Nonetheless, Mundt wrote a letter stating that Barron had racing thoughts, auditory hallucinations, dissociative episodes and general problems with concentration and focus, which, when added to her obsessive-compulsive disorder, "would make it nearly impossible to stay on task in any type of work setting." AR 533. The ALJ was entitled to find, as he did, that Mundt's opinions were inconsistent with her own clinical findings.

17

Barron further relies on a statement from Dr. Marandola that her attention and concentration are poor, she would have difficulty interacting with supervisors, co-workers, and the public, and she had a history of poor judgment and would have difficulty adjusting to changes in a work environment. *See* Doc. No. 13 at 22 (citing AR 927-28). The ALJ acknowledged Dr. Marandola's opinion and determined that it was entitled to some weight. AR 29. The ALJ accordingly included restrictions in his RFC that incorporated some of Dr. Marandola's findings. For example, the ALJ determined that Barron should only perform jobs where interaction with the public, supervisors, and peers should be minimized or not occur; and any work should have minimal change and be repetitive in nature without the need to concentrate or change from one task to another. AR 20-21, 27-28.

Finally, the ALJ did not err in relying on Dr. England, a medical expert who testified at Barron's hearings. Dr. England provided opinions based on his review of clinical findings. AR 116-37. The ALJ pointed out that Dr. England found no basis for concentration problems based on Barron's performances in intelligence and memory tests. AR 23, 70-71, 122-23. Dr. England also testified about Barron's mental health history and how the record did not indicate that she consistently had hallucinations or psychotic syndromes for the required 12 months. AR 23, 71, 118.

The ALJ noted Dr. England's testimony that Barron's obsessive compulsive disorder and posttraumatic stress disorder were fairly well controlled, but she still had difficulty being around people. AR 23, 72-73, 119-20, 133. Dr. England testified that treatment personnel had not consistently diagnosed a personality disorder during the adjudicated period and that the record did not support a finding that Barron was unable to perform all work before April 2011. AR 23-24, 73, 120-121. The ALJ was entitled to find that this testimony was consistent with the objective evidence supporting the denial of benefits for the adjudicated period before April 2011.

The ALJ also relied on Dr. England's testimony to find that Barron satisfied Listing 12.04 for the period between April 1, 2011 and July 2012, but not before or after. AR 25-26, 76. Dr. England testified that during that period of time there was evidence of "some pretty fair instability," AR 76, with evidence that Barron's functioning significantly improved after a treatment regimen started in early July 2012. AR 25-26, 77-78. The ALJ also noted that Dr. England testified that Barron's mental and physical conditions improved after July 2012 to the point that while she still had some symptoms, they were not at the disabling level. AR 30.

Based on his consideration of the record as a whole, the ALJ found that Barron had some limitations but retained the physical and mental RFC to perform particular jobs, as identified by the VE. AR 25, 31. This court may not simply reweigh the medical evidence. *Wildman*, 596 F.3d at 964; *McKinney*, 228 F.3d at 863; *Loving v. Dep't of Health & Human Servs.*, 16 F.3d 967, 969 (8th Cir. 1994). It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). The court must defer to the ALJ's resolution of the conflicts in the record. Even if the court would have decided the matter differently had it been in the ALJ's position, and even if substantial evidence may have supported another finding, the Court cannot reverse an ALJ's decision that is supported by substantial evidence. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Based on my review of the record as a whole, I find that to be the case here.

### C. *Compliance with the Appeals Council's Order*

The Appeal Council, in remanding the case for additional proceedings, provided various directions to the ALJ. AR 187-89. Barron contends that the ALJ failed to comply with those directions, particularly with regard to Dr. England. Doc. No. 13 at 26-29. The Appeals Council directed the ALJ to "further consider Dr. England's opinion and resolve inconsistencies between the opinion and the decision's findings." AR 187.

As discussed above, the ALJ expressly addressed Dr. England's testimony on remand and concluded that his opinions were entitled to significant weight. AR 23-24, 30. I have already found that the ALJ's findings as to Barron's physical and mental RFC are supported by substantial evidence in the record as a whole. I also note that the Appeals Council had the opportunity to consider whether the ALJ complied with remand directions but declined to grant Barron's request for review of the second ALJ decision. AR 1-4. For these reasons, I find no reversible error.

## VI. CONCLUSION

After a thorough review of the entire record and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Barron was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against Barron and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 22nd day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE